IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CARLOS M. HARDIMAN,**

      **Plaintiff,**

                                                    Civil Action 2:12-cv-508
    **v.**                                          Judge Michael H. Watson
                                                    Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Carlos M. Hardiman, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF Nos. 10 and 11), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 17), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**I.**

**A.    Background**

Plaintiff filed his application for social security disability insurance benefits under Title II of the Social Security Act on October 6, 2008, at age 40.  He also filed a Title XVI application for supplemental security income on January 9, 2009.  (R. at 13, 140–46.)  Plaintiff met the financial requirements for disability insurance benefits eligibility through June 30, 2010.  Plaintiff alleges disability as a result of his crushed left foot and his difficulties reading and writing.  Plaintiff's application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  Administrative Law Judge J. Richard Stables ("ALJ") held a hearing in November 2010, at which Plaintiff, represented by counsel, appeared and testified.  (R. at 53–81.)  Dr. Hermona Robinson, a vocational expert ("VE"), also appeared and testified at the hearing.  (R. at 76–79.)  In February 2012, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-4.)  Plaintiff then timely commenced the instant action.

In his Statement of Errors, Plaintiff advances three assertions of error.  Plaintiff first contends that the ALJ erred in his consideration or lack of consideration of Listing § 1.03.  Within this contention of error, Plaintiff submits that the ALJ's conclusion that he did not meet Listing § 1.03 is internally inconsistent with limitations the ALJ incorporated into his RFC relating to ambulation.  Plaintiff maintains that he meets Listing § 1.03 because he is unable to ambulate effectively as defined in 20 C.F.R Pt. 404, Subpt. P, App. 1 § 1.00B(2)(b).  Plaintiff next asserts that the ALJ erred in failing to include mild mental retardation as a severe mental impairment.  Finally, Plaintiff posits that the ALJ erroneously characterized him as having a

"limited education," where the evidence established that he was illiterate. (Pl.'s Statement of Errors 2, ECF No. 10.)

The Undersigned finds Plaintiff's first assignment of error to be well taken. This finding obviates the need for in-depth analysis of Plaintiff's remaining assignments of error. Thus, the Undersigned need not, and does not, resolve the alternative bases Plaintiff asserts support reversal and remand. Accordingly, the Undersigned will now focus its review of the record on evidence relevant to Plaintiff's first contention of error.

**B.     Relevant Hearing Testimony**

At the November 29, 2010 hearing, Plaintiff testified that he crushed his left foot during a fall in 1996. (R. at 66, 67.) He indicated that he had surgery on December 1, 2009, because his foot had progressively gotten worse since the fall. In this surgery, doctors put artificial bones and pins and his foot and also did a bone fusion. (*Id.*) Plaintiff testified that the surgery worsened his condition because his ankle is now more painful, stiff, and likely to lock up. (R. at 68.)

At the time of the hearing, Plaintiff wore a rigid brace around his foot and ankle. (*Id.*) Plaintiff testified that he utilizes a cane to walk because he frequently loses his balance. (R. at 68.) He explained that his foot gives out if he steps on little rocks or pebbles. He added that he cannot walk more than two blocks due to pain. Plaintiff indicated that with his cane, he could stand ten minutes at a time, but could not navigate stairs. His aunt, with whom he lives, installed a handicap ramp for him. (*Id.*) His foot always aches and throbs if he puts it down on the ground too long. (R. at 69.) Plaintiff testified that his doctor wants to do an additional surgery to fuse the remainder of his foot. (R. at 70.)

C.     **Relevant Medical Records**

Plaintiff received treatment for his left foot and ankle from the pysicians at Mount Carmel Hospital from August 2009 through October 2010.  (R at 257–70, 372–98.)  On December 1, 2009, Plaintiff underwent a subtalar arthrodesis, a surgery that fused his subtalar joint and fixed it with screws.  The post-operative x-ray documented two pins in his ankle.  (R. at 399.)

At a March 10, 2010 visit, Plaintiff reported continued pain, but indicated that he was able to "get around" without his walker boot and that his foot fits into normal shoes.  (R. at 263.)  Plaintiff further reported that he was ambulating better than he had been, but that he continued to need a cane.  (*Id.*)

At an October 2010 visit, Plaintiff reported intermittent chronic pain that worsened during weight bearing.  (R. at 257.)  Upon physical examination, Roger E. Wiltfong, M.D., documented significant tenderness and observed that palpating certain areas caused Plaintiff to recoil in pain.  (*Id.*)  Dr. Wiltfong opined that the pain was likely caused by a compression of the peroneal nerves and that a less likely cause could be an infection.  (*Id.*)  Dr. Wiltfong indicated that Plaintiff needed to obtain a computed tomography scan ("CT scan") and a left ankle immobilizer.  (R. at 257–59.)  He added that Plaintiff's treatment plan would be further revised upon receipt of the CT scan results.  (R. at 259.)

D.     **The Administrative Decision**

On January 20, 2011, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 13–21.)  The ALJ found that Plaintiff had the following severe impairments: crushed left foot/ankle injury; major depressive disorder;

generalized anxiety disorder; and alcohol dependance. (R. at 15.) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (R. at 16.) The ALJ explicitly noted that he considered the following Listings: 1.02 (major dysfunction of a joint); 1.06 (fracture of one or more of the tarsal bones); 12.04 (affective disorders); 12.06 (anxiety related disorders); and 12.09 (substance addiction disorders). (*Id*.) With regard to the Listings 1.02 and 1.06, in terms of discussion, the ALJ stated as follows:

> An October 2010 treatment record from Mount Carmel Hospital shows that Plaintiff was able to walk using a custom-made orthotic in the left shoe and a cane. Hence, the evidence does not show that he has an inability to ambulate effectively as it is defined in Section 1.00B(2)(b).

(*Id*.) The ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he must use a cane to walk, wear a brace on his left ankle that causes the appendage to be rigid, *avoid rough or uneven ground, and walk slowly and carefully*. He can squat, crawl, and climb stairs or ramps only occasionally. He should never climb ladders, ropes, or scaffolds. He cannot operate foot controls with the left lower extremity, read, or perform detailed or complex tasks. The claimant's abilities to adapt to stresses and change and interact with the public, coworkers, and supervisors are moderately limited. He should avoid situations that involve intensive interaction, fast-paced or frequent change, and high production demand.

(R. at 17 (emphasis added).) Relying on the VE's testimony, the ALJ concluded that Plaintiff was unable to perform his past relevant work, but that he would be able to make a successful adjustment to other work that exists in significant numbers in the local, state, and national economy. (R. at 19–21.) He therefore found that Plaintiff was not disabled under the Social Security Act. (R. at 21.)

## II. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ullman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Univ. Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, [the court does] not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner

will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III. ANALYSIS

The Undersigned concludes that remand is necessary because the ALJ's decision is materially inconsistent and incomplete. It is unclear whether the ALJ considered Listing § 1.03 given that he did not identify it as one of the listings he specifically considered. (*See* R. at 16.) He did, however, identify Listing §§ 1.02 and 1.06, which, like Listing § 1.03, require a finding that the claimant has an "inability to ambulate effectively" as defined in 20 CFR Pt. 404, Subpt. P, App. 1 § 1.00B(2)(b). (*Id.*) Based upon the limited discussion he offered, it appears that the ALJ relied upon the October 2010 treatment record from Mount Carmel Hospital to conclude that Plaintiff did not meet Listings §§ 1.02 and 1.06 because he did not have an "inability to ambulate effectively." (*Id.*) This determination, however, is internally inconsistent with the restrictions he set forth in his subsequent RFC determination. Further, the October 2010 treatment record is not substantial evidence supporting the ALJ's determination.

"At step three of the evaluation process, it is the burden of the claimant to show that he [or she] meets or equals the listed impairment." *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 727–28 (6th Cir. 2004). Accordingly, "[w]hen a claimant alleges that he [or she] meets or equals a listed impairment, he [or she] must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Id.* at 728. The United States Court of

Appeals for the Sixth Circuit has emphasized that ALJ's are not subject to a "heightened articulation standard" in considering the listing impairments. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). Instead, the Court simply reviews whether substantial evidence supports the ALJ's findings. *See id.*

Listing § 1.03 specifically requires, "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, *with inability to ambulate effectively*, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. 404, Subpt. P, App. 1 § 1.03 (emphasis added). The regulations describe inability to ambulate effectively as follows:

> Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 CFR Pt. 404, Subpt. P, App. 1 § 1.00B(2)(b). The regulations further provide:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, *the inability to walk a block at a reasonable pace on rough or uneven surfaces*, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.* (emphasis added).

Based upon the examples proffered above, the ALJ's step three determination that Plaintiff retains the capacity to ambulate effectively appears to be at odds with his subsequent

8

RFC determination that Plaintiff must use a cane to walk, wear a brace on his left ankle that causes the appendage to be rigid, and *avoid rough or uneven ground, and walk slowly and carefully*.  (R. at 17 (emphasis added).)  *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009) (A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." ); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a) (same).

In addition, the October 2010 treatment record upon which the ALJ relies does not support his determination that Plaintiff can ambulate effectively as contemplated in § 1.00B2b. That record contains a only passing reference relating to ambulation: "[Plaintiff] does have a custom made orthotic in the left shoe, which he does say has helped with his pain in addition to a cane that he uses to ambulate." (R. at 257.)  This record, however, does not elucidate whether or not Plaintiff could ambulate effectively as contemplated in § 1.00B2b.  Further, no medical source offered an opinion regarding Plaintiff's ability to ambulate effectively after his surgery. On this point, however, Plaintiff testified that his condition worsened after the surgery such that even using a cane and a rigid brace, his foot gives out if he steps on little rocks or pebbles and that he cannot walk more than two blocks due to pain. (R. at 68.)  The ALJ found this testimony credible, incorporating the restriction that Plaintiff "avoid rough or uneven ground, and walk slowly and carefully" into his RFC determination.  (R. at 18.)  For these reasons, the Undersigned cannot conclude that substantial evidence supports the ALJ's step three determination.

In sum, the Undersigned concludes that the ALJ's decision is internally inconsistent and incomplete.  Remand is appropriate so that the ALJ consider whether Plaintiff can satisfy *all* of

the requirements of Listing § 1.03, including the twelve-month durational requirement. *See Faucher v. Sec'y of Health and Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) ("[T]he court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."); *Straight v. Colvin*, No. 1:12-cv-2208, 2013 WL 1947244, at *8 (N.D. Ohio April 19, 2013) (remanding where the ALJ's listings determination at step three was internally inconsistent with this step two findings).

## IV.

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:  July 16, 2013                                         /s/ *Elizabeth A. Preston Deavers*
                                                                          Elizabeth A. Preston Deavers
                                                                          United States Magistrate Judge